IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| Panircelvan Kaliannan, et. al., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | **ORDER DENYING DEFENDANT** |
| | ) | **EE HOONG LIANG'S MOTIONS** |
| vs. | ) | **TO DISMISS COMPLAINT** |
| | ) | |
| EE Hoong Liang, | ) | |
| | ) | |
| Defendant. | ) | Case No. 3:17-cv-090 |

Before the Court are several pro se motions to dismiss the Plaintiffs' complaint filed by the Defendant, EE Hoong Liang. See Docket Nos. 13, 18, and 21. For the reasons set forth below, the motions are denied.

I. **BACKGROUND**

The Plaintiffs filed this action in the wake of proceedings filed against North Dakota Developments, LLC ("NDD"), Robert Gavin, Daniel Hogan, and relief Defendants by the United States Securities and Exchange Commission, alleging NDD, Gavin, and Hogan fraudulently raised more than $62 million from investors through the sale of interests in North Dakota man camps. See Case No. 4:15-cv-053 (D.N.D. May 5, 2015). In their complaint, the Plaintiffs allege EE Hoong Liang actively assisted NDD in offering and selling, unregistered, nonexempt, and fraudulent securities from May 2012 to April 2015. See Docket No. 8. Specifically, the Plaintiffs allege claims against EE Hoong Liang, by separate counts, for violations of Section 12(a)(2) of the Securities Act of 1933 (15 U.S.C. § 77l(a)(2)); violations of N.D.C.C. § 10-04-17 by offering and selling unregistered securities, selling securities as an unlicensed agent, and making untrue statements and omissions; as well as negligence.

After filing an answer, Liang filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on August 17, 2017. See Docket No. 13. Liang filed an amended motion to dismiss on August 29, 2017, and a subsequent motion to dismiss on September 18, 2017. See Docket Nos. 18 and 21. The Plaintiffs filed responses in opposition to Liang's motions on September 1, 2017, and October 10, 2017. See Docket Nos. 19 and 30.

## II. LEGAL DISCUSSION

In the memorandum in support of the motions to dismiss (Docket No. 22), Liang asserts the Court lacks jurisdiction over the matter, the venue of this action is improper, and the complaint fails to state a claim upon which relief can be granted. The Plaintiffs disagree, contending this Court has jurisdiction, the complaint satisfies the Rule 8 pleading requirement, and the venue is proper.

### A. RULE 12(b)(2)

In the memorandum in support of the motion to dismiss, Liang contends the Court lacks personal jurisdiction over him and the claims against him should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. To defeat a motion to dismiss for lack of personal jurisdiction, the Plaintiffs need only establish a prima facie showing of personal jurisdiction over Liang. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). The Plaintiffs' prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish that a court has in personam jurisdiction

carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647.

This Court may properly exercise personal jurisdiction over a party if a two-step inquiry is satisfied. First, the party must be amenable to service of process under the appropriate long-arm statute. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Second, the party challenging personal jurisdiction must have engaged in activities which satisfy the minimum contacts requirement of the Due Process Clause. Id. The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by due process." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223. The Eighth Circuit Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).

"Due Process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). A non-resident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps, 327 F.3d at 648. There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum: general jurisdiction and specific jurisdiction. With respect to general personal jurisdiction over a defendant, "a defendant may be

subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." Id.  A state has specific personal jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state.  Johnson, 444 F.3d at 956.

The Eighth Circuit has established a five-factor test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant:

> (1) the nature and quality of a defendant's contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Dever, 380 F.3d at 1073-74.  In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances.  Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).  However, the Eighth Circuit directs courts to give "significant weight" to the first three factors.  Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).  The Eighth Circuit's five-part test essentially "blends" the tests for general and specific jurisdiction.  See Northrup King Co., 51 F.3d at 1388.

Under the test outlined above, the Plaintiffs have the burden of proving facts to support personal jurisdiction.  Dever, 380 F.3d at 1072.  The Plaintiffs need not prove personal jurisdiction by a preponderance of the evidence until a court holds an evidentiary hearing or until trial.  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).  Absent a hearing, the Court will consider the facts in the light most favorable to the non-moving party and resolve all conflicts in favor of that party.  Romak USA, Inc., , 384 F.3d at 983-84.

Here, Liang contends the Court lacks jurisdiction over him because neither the Plaintiffs nor the Defendant are citizens of the United States; the Plaintiffs and the Defendants do not operate

businesses in North Dakota, do not possess a North Dakota mailing address, and do not hold North Dakota assets or property. See Docket No. 22, p. 5. However, applying the five-factor test for minimum contacts to Liang, the Court concludes it has personal jurisdiction over Liang.

### a) **NATURE AND QUALITY OF CONTACTS**

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1992). In his memorandum in support of a motion to dismiss, Liang asserts this Court lacks jurisdiction over the matter because:

> A. Plaintiffs and the defendant are non USA citizens
> B. Plaintiffs and defendant have no USA or North Dakota business activities
> C. Plaintiffs and defendant have no USA or North Dakota mailing addresses
> D. Plaintiffs and defendant have no USA or North Dakota Assets
> E. Plaintiffs and defendant have no USA or North Dakota properties
> F. Moreover plaintiffs and defendant that bought NDD hotel room units [h]ave gone into liquidations and that all money proceeds were already paid to plaintiffs since March/April 2017 period.

See Docket No. 22, p. 5. Even assuming such statements as facts, none of these facts preclude the Court from exercising jurisdiction over this case.

In their Complaint, the Plaintiffs allege:

> This Court has personal jurisdiction over Defendant because, among other things, Defendant: actively recruited investors to invest in a North Dakota company; brokered the sale of interests in North Dakota real property and of North Dakota-issued securities; received fraudulent offering documents from North Dakota and directed communications to North Dakota, pertaining to their fraudulent sales of NDD securities; received commissions from North Dakota in connection with their sales; directed investor funds and investment-related paperwork to be sent to a North Dakota law firm in connection with the sales; communicated extensively with various North Dakota entities in connection with the sales; travelled to North Dakota specifically for the purpose of marketing and selling the investments to Plaintiffs and other investors, and on such trips taking video and still photographs

as "evidence" of and for the purpose of, due diligence that the NDD buildings were functioning and the oil business as thriving as advertised; and, acted as a necessary intermediary in connection with a fraud emanating from North Dakota.

See Docket No. 8, pp. 4-5 (internal citations omitted). Based upon a review of the record, it is also evident Liang transacted business with North Dakota entities on several occasions. Liang's contact with North Dakota is not random, fortuitous, and attenuated. The nature and quality of these contacts support the exercise of personal jurisdiction over Liang.

### b) QUANTITY OF CONTACTS

Quantity is a consideration when general jurisdiction is alleged. Lakin v. Prudential Sec, Inc., 348 F.3d 704, 712 (8th Cir. 2003). It is well-established that specific jurisdiction can arise from a single contact with the forum state. Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973). The Plaintiffs presented prima facie evidence in their complaint that Liang traveled to North Dakota to facilitate business with NDD. See Docket No. 8. Such contact satisfies the single contact needed to give rise to personal jurisdiction over Liang. Moreover, Liang's contact with Plaintiffs to facilitate the sale of unregistered, fraudulent NDD securities related to North Dakota real estate more than satisfies the quantity of contacts needed to support personal jurisdiction.

### c) RELATION OF CONTACTS TO CAUSE OF ACTION

Defendant Liang's contact with North Dakota directly relates to this cause of action. The Plaintiffs allege Liang solicited for sale and sold unregistered, fraudulent North Dakota securities, related to North Dakota real estate. The Plaintiffs further allege:

81. Defendant worked closely with the NDD Scheme perpetrators, in North Dakota and elsewhere, to prepare marketing materials targeting Plaintiffs and offering the unregistered NDD securities.

82. Defendant negotiated with the NDD Scheme perpetrators and accepted a compensation based on sales commissions for his sales of unregistered NDD securities to Plaintiffs.

83. Defendant's compensation was exorbitant: upon information and belief Defendant received as much as 20% of Plaintiffs' investments, in sales commissions.

84. Such sales commissions were never disclosed to Plaintiffs.

85. The sales commissions would have been material to Plaintiffs' investment decision because they substantially diminished the amounts available to be invested and to generate the promised investment returns to Plaintiffs.

86. Defendant approached each and every Plaintiff and offered to them the NDD "investment opportunity."

87. Defendant gave each and every Plaintiff investment-related brochures and pamphlets that described the NDD investment opportunity, and described the NDD investment opportunities based on the information in those pamphlets and brochures.

88. Defendant travelled to North Dakota and took photographs and videos, which he then transmitted to Plaintiffs and other potential investors. These photographs and videos were meant to persuade investors that the NDD properties were operational and that the oil industry activity in the vicinity of Williston was of sufficient volume to make the NDD properties profitable. See Figures 1 and 2, which depict Defendant near buildings identified as NDD development, and in front of an oil operation, respectively.

See Docket No. 8, pp. 16-17. These actions form the base of the Plaintiffs' claims against Liang and were directly related to North Dakota. Consequently, the Court finds it has jurisdiction over Liang to adjudicate claims arising out of the sale or solicitation of unregistered, fraudulent North Dakota securities related to real property located in North Dakota. The Court notes that some statements contained within Liang's memorandum in support of the motion to dismiss appear to

contradict specific factual underpinnings of allegations in the complaint (e.g. percentage of commission received by Liang from North Dakota Developments). However, these statements alone are not sufficient to divest the Court of jurisdiction over this matter.

### d) INTEREST OF THE FORUM STATE AND CONVENIENCE OF THE PARTIES

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003). The fourth factor is the interest in the forum state in adjudicating the cause of action. The Court finds it is in the interests of North Dakota to adjudicate the sale of unregistered, fraudulent securities tied to real property located in North Dakota. The Plaintiffs' claims relate to the regulation of securities in North Dakota and to the disposition of real property within North Dakota. These specific claims are local in nature. Therefore, the interest of North Dakota in adjudicating these claims is heightened

The fifth factor pertains to the convenience of the parties. The Court finds that, although none of the parties are residents of North Dakota, the State would be a convenient forum for this dispute because the property related to the sale of unregistered, fraudulent securities is located in North Dakota. Moreover, much of the activity related to the sale or solicitation of unregistered, fraudulent securities. Therefore, this factor weighs in favor of exercising personal jurisdiction, but as stated above, the last two factors are of secondary importance. See Stanton, 340 F.3d at 694; Northrup King Co, 51 F.3d at 1388. Based on Liang's contacts with North Dakota, and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over the Defendant would not violate due process. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would not offend

traditional notions of fair play and substantial justice. The Plaintiffs have sustained their burden of proof, and established the Court's in personam jurisdiction. The Court finds it possesses personal jurisdiction over Liang.

### B.     RULE 12(b)(3)

In the memorandum in support of the motion to dismiss, Liang also asserts the Plaintiffs' complaint must be dismissed because it was filed in an improper venue. In support of his contention, Liang states that none of the parties are citizens of the United States, only two sales presentations were conducted by Robert Gavin in Singapore, and all contracts were issued from the United Kingdom. See Docket No. 22, p. 4. Pursuant to 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events of omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). As the Court has previously discussed, the Plaintiffs' claims arise from the sale or solicitation of unregistered, fraudulent North Dakota securities related to real property located in North Dakota. Without question, this Court is a proper venue to bring an action because the Plaintiffs' allegations relate to real property located in North Dakota. Therefore, the Court concludes, even assuming none of the parties are citizens of the United States, pursuant to 28 U.S.C. § 1391(b)(2), venue of this action in North Dakota is proper.

### C.     RULE 12(b)(6)

Liang's last contention is that the Plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted. In support of his contention, Liang states only that:

> Plaintiffs claim must be dismissed because their legal claims are without Merit. The defendant have no legal responsibility over the actions, operations, and

> Activities of NDD, Robert Gavin, Danny Hogan and Pearce & Durick as per Plaintiffs case complaint from page 6 to page 23. Therefore the defendant cannot be held liable to Plaintiffs investment Decisions and loses.

See Docket No. 22, p. 5. Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements" of a cause of action. Id. at 681. A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Id. The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling the plaintiff to relief. Ulrich v. Pope Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

It is unquestionably clear the complaint here contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to satisfy Rule 8. Ashcroft, 556 U.S. at 678. Consequently, the Court concludes Liang has failed to demonstrate dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted.

### III.     CONCLUSION

The Court has carefully considered the entire record, the parties' briefs, and the relevant case law.  For the reasons set forth above, the Court **DENIES** Liang's motions to dismiss (Docket Nos. 13, 18, and 21).

**IT IS SO ORDERED.**

Dated this 27th day of March, 2018.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court